

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2003

# Miller v. Ashcroft

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4028

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Miller v. Ashcroft" (2003). *2003 Decisions.* Paper 242.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/242

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-4028

———————

SAMUEL L. MILLER,
                              Appellant

v.

JOHN ASHCROFT, Attorney General;
DEPARTMENT OF JUSTICE, Federal
Bureau of Prisons

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Civil No. 01-cv-01829
Magistrate Judge:  The Honorable J. Andrew Smyser

———————

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2003

———————

Before: ALITO, BARRY, and AMBRO, Circuit Judges

———————

(Opinion Filed: September 30, 2003)

———————

OPINION

———————

BARRY, Circuit Judge

    Appellant Samuel Miller is an African-American employee of the federal Bureau

of Prisons (BOP).  Miller alleges that his January 2, 2000 demotion from the position of case manager to that of corrections officer, and the one-day disciplinary suspension imposed March 8, 1999, were the result of racial discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.  Miller further alleges that his demotion and suspension breached the settlement agreement which resolved his prior employment discrimination action against the BOP.

Miller now appeals the Magistrate Judge's October 2, 2002 grant of the BOP's motion for summary judgment.[1]  Miller's challenge is founded largely upon his contention that the Magistrate Judge abused his discretion in denying various motions made by Miller concerning discovery and motion deadlines.  In essence, Miller argues that because these motions were denied, he was unable to file a timely response to the BOP's summary judgment motion, and that the Magistrate Judge thus erred in considering that motion unopposed.

We have jurisdiction over the appeal pursuant to 28 U.S.C. §§ 636(c)(3) and 1291. We conclude that the Magistrate Judge did not abuse his discretion in denying Miller's motions concerning discovery and motion deadlines, including the denial of Miller's motion for an extension of time to file an opposition to the BOP's summary judgment

---

[1] The parties in this case consented to conduct the case before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

2

motion and his motion to file a brief *nunc pro tunc*. Accordingly, the Magistrate Judge properly treated the BOP's statement of facts in support of its motion as admitted, and correctly held that the BOP had established valid, non-discriminatory reasons for Miller's suspension and demotion. We will, therefore, affirm.

## I.

Miller started work as a corrections officer at the maximum security prison operated by the BOP in Lewisburg, Pennsylvania in March of 1987. In 1989, he applied for a promotion to the position of case manager. When he was not promoted, he filed an administrative complaint contending that he had been passed over due to his race and physical condition (Miller is a diabetic). As a result of that complaint, Miller was made a case manager trainee in 1992. When the BOP ultimately decided not to promote him to that position, Miller filed an employment discrimination lawsuit in federal court in 1993. After a jury found in his favor, the BOP entered into a settlement agreement with him which mandated, *inter alia*, his promotion to case manager.

In his current complaint, Miller alleges that soon after he was promoted, his supervisors at the Lewisburg prison treated him unfavorably in comparison to his co-workers in retaliation for his success in his first lawsuit and because of his race. According to the complaint, his supervisors subjected him to "hyper-scrutiny" and "micro-management" as well as disparate application of work and leave rules. The

complaint alleges that this disparate treatment culminated in the events that resulted in his one-day suspension and ultimate demotion.

Miller filed the complaint on September 19, 2001 and, after some preliminary delays in scheduling a case management conference, the Magistrate Judge entered a case management order on February 22, 2002. The order provided that all discovery was to be complete by July 1, 2002, and that the deadline for dispositive motions was August 1, 2002. The order also expressly cautioned the parties that "extensions of the discovery period will be granted only when good cause arises and application is timely made," and explained that "[g]ood cause shall be found only when new circumstances have occurred that could not reasonably have been anticipated and that are of an extraordinary nature."

As the discovery deadline neared, the BOP moved for a one-month extension of that deadline due to defense counsel's illness and time spent preparing for trial in an unrelated case. The Magistrate Judge granted this consent motion on July 2, 2002, set a new discovery deadline of August 1, 2002, and extended the deadline for dispositive motions to September 1, 2002.

On July 25, 2002, one week before the revised discovery deadline, Miller moved for a one-month extension. In the motion, counsel alleged that he had served discovery requests and interrogatories in late April 2002, but that the BOP had only responded on July 24, 2002 despite counsel's repeated inquiries in late May. Counsel further alleged that the defendants' responses to his interrogatories were insufficient to allow him to

4

determine which individuals he needed to depose in advance of trial. In response, defense counsel alleged that Miller's discovery requests were not properly served until June 26, 2002, and denied having been contacted by counsel in late May. Further, defense counsel contended that his response to Miller's discovery requests was complete, and noted that the joint case management plan filed by the parties on December 28, 2001 had identified four individuals that Miller could have deposed. Defense counsel also emphasized that Miller had already received most of the document discovery he had requested, as well as affidavits from most of the relevant witnesses, during the course of administrative proceedings before the Equal Employment Opportunity Commission (EEOC) prior to filing the complaint.

On August 1, 2002, the Magistrate Judge issued an order, faxed to the parties, scheduling a hearing on Miller's motion for an extension for 1:30 pm on August 6, 2002. The day after Miller's counsel failed to appear for the scheduled hearing, an order was entered denying Miller's motion. Two weeks later, on August 21, 2002, Miller filed a motion to compel discovery pursuant to F.R.Civ.P. 37, which essentially reiterated the reasons he had given in his July 25 motion to extend the discovery deadline. Miller's motion to compel failed to comply with several local rules of the Middle District of Pennsylvania: it did not state whether defense counsel consented to the motion, it did not contain a certification that counsel had made an attempt to resolve the dispute without court intervention, and it was not accompanied by a supporting brief. See M.D. Pa. R. 7.1,

7.5 & 26.3.

On September 3, 2002, the BOP filed a motion for summary judgment.[2] The statement of material facts in support of the motion set forth the circumstances of Miller's one-day suspension and subsequent demotion. According to the local rules, Miller's opposition to the motion was due on September 23, 2002.[3] The day *after* his opposition was due, on September 24, 2002, Miller moved for a five-week extension of time in which to file opposition papers. In the motion, counsel stated that he had mistakenly believed that the relevant rules gave him 23 days, instead of 18, to file opposition. He further stated that had been out of the office for two weeks before the BOP's motion was filed and had been ill for three days after it was filed.

Three days later, on September 27, 2002, the Magistrate Judge denied Miller's motion for an extension of time to respond. On September 30, 2002, Miller's counsel moved for reconsideration of that denial, simply reiterating his contentions in the original motion for an extension, and adding only that he had also been occupied with moving plans and that the associate working on Miller's opposition had unexpectedly accepted employment elsewhere. That same day, Miller also filed a response to the BOP's

---

[2] Because the September 1, 2002 deadline for dispositive motions fell on a Sunday, and the following Monday, September 2, was a federal holiday, the September 3 filing was timely.

[3] Local Rule 7.6 requires that opposition to a motion be filed within fifteen days of service of the movant's brief, F.R.Civ.P. 6(e) added three days to this period, and Miller had two extra days because the due date fell on a Saturday.

statement of undisputed facts along with various exhibits, but no supporting brief.

The very next day, Miller filed yet another motion, this time to strike the BOP's motion for summary judgment. The motion to strike essentially argued that the BOP's failure to timely and fully respond to Miller's interrogatories warranted the sanction he was seeking. Miller also filed a brief in opposition to the summary judgment motion, along with a motion for an extension of time to file the brief *nunc pro tunc*.

On October 2, 2002, the Magistrate Judge granted the BOP's summary judgment motion as to Miller's discrimination claims and dismissed Miller's claim based on breach of the settlement agreement for lack of subject matter jurisdiction. In his opinion, the Magistrate Judge treated the BOP's statement of material facts and exhibits in support of the motion for summary judgment as uncontested due to Miller's failure to file a timely opposition. The Magistrate Judge thus held that Miller had failed to establish a prima facie case of racial discrimination or retaliation, and that, in any event, the BOP had shown legitimate, non-discriminatory reasons for suspending and demoting Miller based upon his refusal to follow orders and his consistently poor job performance. The Magistrate Judge also explained that Miller's motion to compel, which was still pending, was deemed withdrawn due to his failure to file a supporting brief. On the next day, October 3, 2002, the Magistrate Judge issued separate orders summarily denying Miller's pending motions for reconsideration of his motion for an extension of time to file opposition to the summary judgment motion, and his motion for leave to file an

7

opposition brief *nunc pro tunc*.

On October 11, 2002, Miller moved for reconsideration of the grant of summary judgment. On November 22, 2002, the Magistrate Judge denied that motion as well as Miller's earlier motion to strike. The Magistrate Judge noted that Miller had not presented any newly discovered evidence, and concluded that "[t]he plaintiff failed to timely oppose the motion for summary judgment and we conclude that we did not commit error in holding the plaintiff to the consequences of that failure." As to the motion to strike, he concluded that Miller's allegations of the BOP's insufficient discovery responses should have been presented in a timely and properly briefed motion to compel.

## II.

On appeal, Miller argues that the Magistrate Judge's denial of his numerous motions, particularly those motions seeking to file a late response to the BOP's summary judgment motion or requesting that the Magistrate Judge consider his late-filed response and exhibits, effectively denied him his day in court. Miller contends that his late-filed opposition to the summary judgment motion and supporting exhibits indicate the existence of triable issues of fact which would have precluded the grant of summary judgment. He insists that, in these circumstances, the Magistrate Judge's refusal to grant an extension of time or to consider his late-filed opposition, especially where the lateness of the filing would have resulted in no prejudice to the defendants, constitutes reversible

8

error.

As Miller concedes, however, our review of the Magistrate Judge's denial of each of his motions – to extend the discovery deadline, to compel discovery, for an extension of time to file his opposition to the summary judgment motion, to allow him to file a late opposition, to strike defendants' summary judgment motion, and for reconsideration of the grant of summary judgment – is for abuse of discretion. See In re Fine Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) ("Appellants have a heavy burden to bear . . . as matters of docket control and conduct of discovery are committed to the sound discretion of the trial court."); see also, e.g., In re Cendant Corp. PRIDES Litig., 235 F.3d 176, 181 (3d Cir. 2000) (motion for reconsideration); Armstrong v. Dwyer, 155 F.3d 211, 214 (3d Cir. 1998) (motion to compel discovery). Under the abuse of discretion standard, "[w]e will not interfere with a trial court's control of its docket 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." In re Fine Antitrust Litig., 685 F.2d at 817 (quoting Eli Lilly & Co. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1105 (5th Cir. 1972)). Likewise, a trial court's conduct of discovery procedures will be affirmed "absent 'a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible.'" Id. at 818 (quoting Eli Lilly & Co., 460 F.2d at 1105).

After a thorough review of the record and careful consideration of Miller's

9

arguments, we conclude that he has not carried his "heavy burden" of showing that the Magistrate Judge abused his discretion in denying Miller's myriad motions filed in an attempt to overcome what appears to be counsel's lack of diligence in prosecuting the case. At the outset, concerning discovery, we note that Miller has never – not in his various motions nor in his briefs on appeal – effectively refuted the BOP's contentions that he did not properly serve his discovery requests and interrogatories until June 26, 2002 and that it fully responded to his requests on July 24, 2002. Miller also has not refuted the BOP's contention that he learned the identities of relevant witnesses and received most of the relevant documents over the course of the EEOC investigation. Finally, Miller has not explained why he failed to depose the four key witnesses identified by the BOP in the joint case management plan filed by the parties or why he never inspected the relevant documents also identified therein.

Ultimately, Miller fails to identify a single relevant witness or document that was not identified or made available to him at some point either before or during the discovery period, a failure no doubt aggravated by his counsel's failure to attend the hearing on his July 25, 2002 motion for an extension of the discovery deadline. The Magistrate Judge's denial of Miller's motions based upon the BOP's allegedly dilatory discovery responses – his July 25, 2002 motion to extend the discovery deadline, his August 21, 2002 motion to compel, and his October 1, 2002 motion to strike defendants' summary judgment motion – was not an abuse of discretion. If Miller was deprived of any crucial evidence in this

10

case, it was surely not attributable to the Magistrate Judge's denial of his motions but, rather, to counsel's lack of diligence.

Turning to the Magistrate Judge's denial of Miller's motions seeking relief from his failure to file a timely opposition to the BOP's motion for summary judgment, we likewise discern no abuse of discretion. Miller was properly served with the summary judgment motion on September 3, 2002. Local Rule 7.6 provides that "[a]ny party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents within fifteen days after service of the movant's brief." Thus, after adding the three additional days provided by F.R.Civ.P. 6(e) and accounting for the fact that September 21 fell on a Saturday, Miller's opposition was due on September 23, 2002. Miller filed his motion for an extension of time to submit an opposition on September 24, 2002, the day *after* his opposition itself was due.

Even if we accept as true the multitude of excuses proffered by Miller's counsel for his failure to file a timely opposition – that counsel had miscalculated the deadline, had been ill for three days after the motion was filed, and had been unable to contact opposing counsel after he realized his mistake on September 20 – counsel failed to explain why he could not have at least requested an extension at some point during the twenty days *before* the filing deadline. In these circumstances, where counsel was well aware that the BOP's dispositive motion was due on September 1, 2002, had been properly served with the motion on September 3, and where counsel had failed to appear

11

at a scheduled hearing on his own earlier motion for a separate extension two weeks earlier, the Magistrate Judge's denial of Miller's motion for an extension does not amount to an abuse of discretion. It follows from this conclusion that it was also well within the Magistrate Judge's discretion to deny Miller's subsequent September 30, 2002 motion for reconsideration and October 1, 2002 motion for leave to file an opposition *nunc pro tunc.* Each of these motions simply asked the Magistrate Judge to reconsider his earlier denial of an extension, without proffering any additional arguments or new reasons.

Our holding that the Magistrate Judge did not abuse his discretion in denying Miller's motions, however, does not end our inquiry. Even though the applicable local rules provide that a summary judgment motion is to be considered unopposed and its statement of material facts admitted where a responsive brief is not timely filed, see M.D. Pa. R. 7.6 & 56.1, the Magistrate Judge was still required to find that the undisputed facts warranted judgment as a matter of law. See Fed. R. Civ. P. 56; Lorenzo v. Griffith, 12 F.3d 23, 28 (3d Cir. 1993); Anchorage Assocs. v. Virgin Island Board of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). In other words, the Magistrate Judge "must determine that the deficiencies in the opponent's evidence designated in or in conjunction with the motion entitle the moving party to judgment as a matter of law." Anchorage Assocs., 922 F.2d at 175.

It is clear from the Magistrate Judge's written opinion, however, that he did not grant the BOP's motion for summary judgment solely because it was unopposed, but

12

properly analyzed the motion under the familiar burden-shifting analysis applicable to discrimination claims established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Our review of the application of the <u>McDonnell Douglas</u> analysis is plenary. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).

It is well understood that under <u>McDonnell Douglas</u>, the plaintiff bears the burden of adducing sufficient evidence to establish a prima facie case of discrimination. If he succeeds, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse employment action. If the defendant makes such a showing, the plaintiff must adduce sufficient evidence to allow a reasonable jury to infer that the defendant's stated reason for the adverse action was a pretext for unlawful discrimination. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 803-04; <u>Fuentes</u>, 32 F.3d at 763.

Because the evidence submitted in support of the summary judgment motion primarily focused on the reasons for suspending and demoting Miller, we will assume for the sake of this appeal that Miller would have been able to establish a prima facie case of discrimination if he had timely filed an opposition to the BOP's motion. Moving to the second step of the <u>McDonnell Douglas</u> analysis, then, the record is clear that the BOP proffered legitimate, non-discriminatory reasons for Miller's suspension and demotion. As to the suspension, the affidavits submitted by the BOP clearly establish that on July 22, 1998, internal affairs investigator Robby Wilson explained to Miller that he was not at that time under investigation for misuse of sick leave and would have plenty of time to

prepare for such an investigation if one was initiated. The affidavit of Miller's supervisor, Anthony Alexander, explains that he suspended Miller for one day because, despite being informed that he was not under investigation, Miller refused to return to work for over an hour and repeatedly insisted that he be given emergency administrative leave to prepare for the investigation.

The evidence also establishes non-discriminatory reasons for Miller's ultimate demotion. A March 25, 1999 letter from Alexander to Miller clearly explained that Miller had failed to complete several work tasks by established deadlines and had failed to properly perform other specified tasks. The letter also set forth a "performance improvement plan" which outlined the work performance improvements that Miller had to make to retain his job. A subsequent September 22, 1999 letter from Associate Warden Sniezek to Miller in turn clearly explained that Miller's performance had failed to improve and detailed as examples numerous work assignments that he had failed to complete, assignments long overdue, or completed assignments rife with errors. In light of these painstakingly specified performance deficiencies, Snizek recommended Miller's demotion.

This detailed documentation showing that Miller's job performance problems continued even after he was given six months to meet defined minimal performance standards convincingly establishes a non-discriminatory reason or reasons for his demotion. Because Miller failed to timely submit anything which could show that these

14

documented non-discriminatory reasons for the suspension and termination were pretextual, the Magistrate Judge correctly concluded that the federal defendants were entitled to judgment as a matter of law. Moreover, after reviewing the limited evidence Miller submitted in support of his untimely opposition to the summary judgment motion, we conclude that it is insufficient, in any event, to allow a reasonable jury to find that the BOP's stated reasons for the suspension and demotion were pretextual. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.2d at 764. Miller's evidence, consisting almost entirely of his own uncorroborated allegations of disparate treatment, simply does make the requisite showing.

We will affirm the October 2, 2002 order of the Magistrate Judge granting the motion for summary judgment and dismissing the complaint.[4]

---

[4] We note that the Magistrate Judge also properly dismissed Miller's discrimination claim under 42 U.S.C. § 1981 as preempted by Title VII, see Brown v. General Servs. Admin., 425 U.S. 820, 835 (1976), and his breach of contract claim for lack of jurisdiction. In any event, Miller has waived these claims by failing to challenge them on appeal.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge